```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

GEORGE RENÉ LANE,              )
                               )
          Plaintiff,           )
                               )
     v.                        )   CIVIL NO. 1:04CV00789
                               )
LUCENT TECHNOLOGIES, INC.;     )
DAVID W. PRESLEY; CHRISTINE C. )
TROIANELLO; WALTER GIBBONS;    )
and CLAUDIA STICKNEY,          )
                               )
          Defendants.          )


MEMORANDUM OPINION


BULLOCK, District Judge

George René Lane ("Plaintiff") brought this action against Lucent Technologies, Inc. ("Lucent"), David W. Presley ("Presley"), Christine C. Troianello ("Troianello"), Walter Gibbons ("Gibbons"), and Claudia Stickney ("Stickney") (collectively "Defendants") alleging race discrimination, sex discrimination, age discrimination, and retaliation in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). Before the court are the five separate motions to dismiss submitted by Defendants Lucent, Presley, Troianello, Gibbons, and Stickney.

DISCUSSION

I. <u>The Court Does Not Have Personal Jurisdiction Over Defendant Stickney</u>

Defendant Stickney moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Plaintiff must prove, by a preponderance of the evidence, that personal jurisdiction is proper. <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989). When considering the issue without an evidentiary hearing, Plaintiff need make only a prima facie showing of personal jurisdiction. <u>Crown Cork & Seal Co. v. Dockery</u>, 886 F. Supp. 1253, 1256 (M.D.N.C. 1995). In deciding whether Plaintiff has made a prima facie showing, "the Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." <u>Id</u>. (citing <u>Combs</u>, 886 F.2d at 676).

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 396 (4th Cir. 2003).

> Since in personam jurisdiction of a state court is
> limited by that state's laws and by the Fourteenth
> Amendment, [the court must] first inquire whether the

> state long-arm statute authorizes the exercise of jurisdiction over the defendant. If it does, [the court] must then determine whether the state court's exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.

ESAB Group v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997) (internal citations omitted). Defendant Stickney does not contest that North Carolina's long-arm statute is sufficiently broad to reach her if federal due process allows, and therefore the court's inquiry will focus on the constitutionality of asserting jurisdiction over Defendant Stickney.

Federal due process requires that, in order to have personal jurisdiction over a non-resident defendant, the defendant must have "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940))). "Determining the extent of a State's judicial power over persons outside of its borders under the International Shoe standard can be undertaken through two different approaches--by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002) (citing Helicopteros, 466 U.S. at 414). In determining whether a

plaintiff has established specific jurisdiction, the court considers "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Id. at 712 (citing Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 216 (4th Cir. 2001)).

General jurisdiction, on the other hand, arises "from the defendant's general, more persistent, but unrelated [to plaintiff's cause of action] contacts with the State." Id. Such contacts must be "'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." Id. (citing Helicopteros, 466 U.S. at 414 & n.9). "Under this elevated contacts threshold, broad constructions of general jurisdiction should be generally disfavored." Regent Lighting Corp. v. American Lighting Concept, Inc., 25 F. Supp. 2d 705, 710 (M.D.N.C. 1997)(internal quotation omitted).

Here, Defendant Stickney lived in Florida at all relevant time periods for the actions giving rise to Plaintiff's complaint and now lives in Colorado. Defendant Stickney's interaction with Plaintiff was in the context of Defendant Stickney's employment with Defendant Lucent as a human resources employee responding to

4

Plaintiff's internal discrimination claims and to Plaintiff's Equal Employment Opportunity Commission ("EEOC") charges. Defendant Stickney has not been physically present in the state of North Carolina since 1992 and owns no property in the state of North Carolina. Furthermore, Defendant Stickney is not authorized or licensed to do business in North Carolina.

Defendant Stickney's interaction with Plaintiff does not give rise to specific jurisdiction. Although factually connected to Plaintiff's claims of discrimination, Defendant Stickney's actions have not provided a substantial or legal connection to confer jurisdiction on this court. See, e.g., Violanti v. Emery Worldwide A-CF Co., 847 F. Supp. 1251, 1256 (M.D. Pa. 1994) (finding no personal jurisdiction where "[t]he only asserted basis for the existence of jurisdiction over [the defendants] is their alleged complicity in violating the [Pennsylvania Human Relations Act] by terminating plaintiff's employment on the basis of his age. That is plainly insufficient to establish the requisite minimum contacts with this jurisdiction."). Likewise, Defendant Stickney's limited contacts with the state of North Carolina have not been systematic and continuous. Accordingly, due process prohibits the court from asserting either specific or general jurisdiction over Defendant Stickney, and the court will grant Defendant Stickney's motion to dismiss for lack of personal jurisdiction.

5

II. <u>Individual Liability under the ADEA and Title VII</u>

Defendants Presley, Troianello, and Gibbons moved to dismiss Plaintiff's claims against them pursuant to Rule 12(b)(6), Fed. R. Civ. P., arguing that there is no individual liability under either the ADEA or Title VII and, therefore, Plaintiff failed to state a claim against them.[1]  Under the ADEA, it is unlawful for an "employer" to discriminate against an employee on the basis of age.  29 U.S.C. § 623(a).  The ADEA defines an "employer" to mean "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" and provides that "[t]he term also means . . . any agent of such a person."  29 U.S.C. § 630(b).  The Fourth Circuit interprets "§ 630(b) as an unremarkable expression of respondeat superior--that discriminatory personnel actions taken by an employer's agent may create liability for the employer." <u>Birkbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507, 510 (4th Cir. 1994), <u>cert</u>. <u>denied</u>, 513 U.S. 1058.  Employees with authority to make discharge decisions for an employer generally are therefore

---

[1] Defendant Stickney also moved to dismiss on the grounds that neither Title VII nor the ADEA provides for individual liability.  Having no personal jurisdiction over Defendant Stickney, the court's ruling is confined to the movants over whom the court has personal jurisdiction.  Assuming arguendo that the court had personal jurisdiction over Defendant Stickney, the court would analogously grant Defendant Stickney's motion to dismiss on the grounds that neither statute provides for individual liability.

6

not individually liable as an employer's "agent."  See also Swaim v. Westchester Acad., Inc., 208 F. Supp. 2d 579, 584 (M.D.N.C. 2002) ("under the ADEA, it is employers--not supervisors--who are subject to liability").  Accordingly, the court will grant the motions to dismiss regarding Plaintiff's ADEA claims asserted against Defendants Presley, Troianello, and Gibbons.

Title VII analogously does not permit individual liability. See, e.g., Harvey v. Blake, 913 F.2d 226, 227-28 (5th Cir. 1990) (holding that Title VII's employer liability is similar to the ADEA's in that individuals acting as an employer's "agents" are liable in their official capacities only).  In Lissau v. Southern Food Serv., Inc., 159 F.3d 177 (4th Cir. 1998), the Fourth Circuit found that its reasoning in Birkbeck was applicable in the context of Title VII.  Id. at 180 ("reading Title VII to foreclose individual liability represents the only logical extension of Birkbeck").  The court reasoned that the 1991 amendments to Title VII "further bolster our conclusion that individuals are not liable under that Act" by tying the amount of damages available to a plaintiff to the size of the employer. Id. at 180-81 ("This sliding scale of liability does not stipulate an amount in cases where a plaintiff seeks to hold an individual supervisor liable.  These amendments to the remedial scheme thus suggest that Congress only intended employers to be liable for Title VII violations.").  The court further reasoned

7

that a "large number of circuit courts have held that individual supervisors are not liable under Title VII. In fact, every circuit that has confronted this issue since the enactment of the CRA has rejected claims of individual liability." Id. These circuits have founded this conclusion on the language of Title VII and the fact that its remedial scheme seems so plainly tied to employer--rather than individual--liability. Id. (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995); Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996); Grant v. Lone Star Co., 21 F.3d 649, 653 (5th Cir. 1994); Wathen v. Gen. Elec. Co., 115 F.3d 400, 406 (6th Cir. 1997); Williams v. Banning, 72 F.3d 552, 554 (7th Cir. 1995); Smith v. St. Bernards Reg'l Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994); Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 588 (9th Cir. 1993); Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996); Smith v. Lomax, 45 F.3d 402, 403 n.4 (11th Cir. 1995); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995)). Accordingly, the court will grant the motions to dismiss regarding Plaintiff's Title VII claims asserted against individual Defendants Presley, Troianello, and Gibbons.

III. <u>The Court Will Consider Plaintiff's Service on Defendant Lucent Timely</u>

Defendant Lucent moved to dismiss based on Plaintiff's failure to serve process within the 120-day time period provided for in Rule 4(m), Fed. R. Civ. P., following the filing of Plaintiff's complaint. Federal Rule of Civil Procedure 4(m) provides that:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Defendant Lucent relies on the Fourth Circuit's holding in <u>Mendez v. Elliot</u>, 45 F.3d 75 (4th Cir. 1995), to argue that, without a showing of good cause for the failure to serve a defendant within 120 days after filing a complaint, Rule 4(m), Fed. R. Civ. P., mandates dismissal. <u>See</u> <u>id</u>. at 78 ("if the complaint is not served within 120 days after it is filed, the complaint must be dismissed absent a showing of good cause"). Dicta in the Supreme Court's opinion in <u>Henderson v. United States</u>, 517 U.S. 654 (1996), however, undermines the continuing validity of <u>Mendez</u>'s mandated dismissal absent a showing of good cause. <u>See</u>, <u>e.g.</u>, <u>U.S. ex rel. Shaw Env't, Inc. v. Gulf Ins. Co.</u>, 225 F.R.D. 526, 528 (E.D. Va. 2005) (the <u>Mendez</u> decision "has been called into question by dicta in [<u>Henderson</u>], and

9

subsequently by several district court decisions"); Melton v. Tyco Valves & Controls, Inc., 211 F.R.D. 288, 289 (D. Md. 2002) ("Based on the Supreme Court's clear explication of the meaning of Rule 4(m) in Henderson to allow discretionary extensions of time for service of process and on the other circuit courts' unanimous rejection of the Mendez court's position, this Court believes that the continued vitality of Mendez is seriously in doubt"). Citing the Advisory Committee's Notes on Federal Rule of Civil Procedure 4, 28 U.S.C. App. p. 654, the Henderson Court noted that "in [the] 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown.'" Henderson, 517 U.S. at 662. In Scruggs v. Spartanburg Reg'l Med. Ctr., 198 F.3d 237 (Table), 1999 WL 957698 (4th Cir. 1999), the Fourth Circuit stated that "[a]lthough [the Henderson dicta] was not a holding by the Supreme Court, we regard the Court's statement as persuasive as to the meaning of Rule 4(m)." Id. at **2. But see Wright v. Durham County Jail and Staff (Med., Etc.), 2002 WL 737730, *2 (M.D.N.C. 2002) (stating that good cause for delay must be shown to prevent dismissal pursuant to Rule 4(m) while noting that "a finding of good cause alone would not save the case from dismissal"). Accordingly, the court has discretion to allow a plaintiff to serve a defendant outside the 120-day time period even absent a showing of good cause.

10

Here, Plaintiff's complaint was deemed officially filed on September 2, 2004. One hundred twenty (120) days after September 2, 2004, was December 31, 2004, which was a federal holiday. Accordingly, Plaintiff needed to serve Defendant Lucent by the next business day, which was January 3, 2005, in order for the service to be considered timely. Plaintiff reported to Judge Eliason in his October 6, 2004, motion for appointment of counsel that he had twice attempted to serve Defendant Lucent with summons on its officer Ralph Craviso at its Murray Hill, New Jersey, facility using the Union County sheriff. On October 15, 2004, Judge Eliason addressed Plaintiff's failed attempts at serving Defendant Lucent by stating that "[p]erhaps Plaintiff should look into service by mail, if allowed in the State of New Jersey. Also, Rule 4(d)(2) of the Rules of Federal Procedure allows a plaintiff to request a defendant to waive service of process." Plaintiff timely served the other Defendants, all of whom are represented by the same law firm representing Defendant Lucent, Nexsen Pruet Adams Kleemeier, PLLC. Prior to attempting to serve Defendant Lucent's service agent on December 30, 2004, Plaintiff attempted to confirm with Infosearch, Inc., that it was, in fact, Defendant Lucent's authorized service agent. Infosearch allegedly would not inform Plaintiff regarding whether it was authorized to accept service for Defendant Lucent and "indicated that if they did not [have the authority to accept

11

service for Defendant Lucent] . . . [t]hey would return the summons indicating that they did not represent" Defendant Lucent. Plaintiff thereafter attempted to serve Infosearch, Inc., thought to be Defendant Lucent's original service agent, by sending the summons using Federal Express[2] on December 30, 2004. Federal Express returned the summons to Plaintiff's residence on January 5, 2004. Plaintiff discovered that Infosearch, Inc., changed its name to CSC Networks, which is the purported reason why Federal Express could not deliver the summons timely initially. Plaintiff then overnighted the summons, and on January 6, 2005, 126 days after the Complaint was deemed filed and three days after service would have been considered timely, Plaintiff served Defendant Lucent's service agent, CSC Networks.

Several factors influence the court's decision to consider timely Plaintiff's late service on Defendant Lucent. First, although not dispositive, Plaintiff is pro se and is, accordingly, unfamiliar with the complexities of service of process regarding corporate service agents. See, e.g., Humphrise v. Cracker Barrel Restaurant # 221, 2004 WL 1630512, *3 (N.D. Ill. 2004) ("while a litigant's pro se status cannot be the sole factor in assessing whether good cause exists for non-compliance with Rule 4(m), it is a relevant consideration"). Second,

---

[2]Defendants have not raised the issue of the propriety of service using Federal Express, thus waiving the issue.

Defendant Lucent was not prejudiced by the untimely filing: Defendant Lucent is represented by the same law firm in this matter as the other Defendants and was, accordingly, aware of the filing of the complaint. Third, the three-day delay does not significantly impact the judicial proceedings. Fourth, Plaintiff's explanation for the delay is reasonable: Plaintiff attempted to serve Defendant Lucent directly on two separate occasions prior to October 6, 2004, and attempted to verify the propriety of serving Infosearch, Inc., on behalf of Defendant Lucent but could not elicit a confirmation from Infosearch, Inc. Although Plaintiff did not attempt to effect service on Defendant Lucent's supposed service agent until soon before the prescribed time period had run, Plaintiff's attempt would have been timely but for the change in the identity of the service agent. Fifth, Plaintiff acted in good faith and the change in identity of Defendant Lucent's service agent was beyond Plaintiff's control. Accordingly, the court, in its discretion, will deny Defendant Lucent's motion to dismiss based on a failure to timely serve.

IV.  <u>Plaintiff's Untimely Claims Are Dismissed</u>

In non-deferral states like North Carolina, both the ADEA and Title VII require a plaintiff to file an administrative charge with the EEOC within 180 days of the alleged misconduct. 29 U.S.C. §§ 621-634; 42 U.S.C. § 2000e-5(e)(1). "A discrete

13

retaliatory or discriminatory act 'occur[s]' on the day that it 'happen[s].'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). "A party, therefore, must file a charge within either 180 . . . days of the date of the act or lose the ability to recover for it." Id. The Morgan Court held that:

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- . . . day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

Id. at 113; see also Olson v. Mobil Oil Corp., 904 F.2d 198, 199 (4th Cir. 1990) (finding that employee's ADEA claim was not timely when plaintiff "was aware of sufficient facts within the limitations period to file a charge"); Jenkins v. Trustees of Sandhills Cmty. Coll., 259 F. Supp. 2d 432, 441 (M.D.N.C. 2003) (dismissing pro se plaintiff's Title VII claims regarding incidents in her EEOC charge occurring outside of the 180-day prescribed period). The Morgan Court further found that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse

14

employment decision constitutes a separate actionable 'unlawful employment practice.'" Morgan, 536 U.S. at 114.

Here, Plaintiff filed his first EEOC charge on January 29, 2002, alleging race and sex discrimination and retaliation. Counting backwards 180 days from January 29, 2002, is August 2, 2001, and any charges regarding acts of discrimination or retaliation occurring before August 2, 2001, are untimely. Plaintiff's allegations regarding his alleged demotion in July 2001,[3] is a discrete act for which Plaintiff had sufficient information to allege discrimination and for which Plaintiff should have filed charges within 180 days.

Plaintiff filed his second EEOC charge on May 22, 2002. Plaintiff's May 22, 2002, filing charged Defendant Lucent with only one ground for discrimination, retaliation in Defendant Lucent's May 2, 2002, decision to terminate Plaintiff. Plaintiff, however, reiterated facts underlying his January 29, 2002, claim, including Plaintiff's alleged demotion in July 2001. Counting backwards 180 days from May 22, 2002, is November 23,

---

[3]Although Plaintiff remained in the position of Senior Project Manager until October 2001, Plaintiff admits that he learned of the decision to change his position on July 12, 2001, and that he knew his remaining in the position was only temporary. (Compl. ¶¶ 010, 011, 020.) The date of the actual decision determines timeliness, and therefore Plaintiff's July 12, 2001, alleged demotion is untimely. See, e.g., Delaware State Coll. v. Ricks, 449 U.S. 250, 257 (1980) ("Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.").

15

2001. Accordingly, any charges regarding acts of discrimination or retaliation occurring before November 23, 2001, are untimely.

Plaintiff filed an amendment to his second EEOC charge on November 5, 2002, alleging age discrimination regarding his May 2, 2002, termination. According to the EEOC regulations:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b) (1988). Therefore, as the Fourth Circuit instructed in Evans v. Techs. Applications & Serv. Co., 80 F.3d 954 (4th Cir. 1996), "when an amendment is filed outside the applicable limitations period, it may be considered timely if it involves claims 'related to or growing out of' the original charge." Id. at 963 (quoting 29 C.F.R. § 1626.8(c))(finding that plaintiff may not untimely amend an EEOC charge to include age discrimination because age discrimination does not necessarily flow from the original sex discrimination charge). The Fourth Circuit further noted that "[o]ther courts have observed that permitting a late amendment to an original discrimination charge adding an entirely new theory of recovery 'would eviscerate the administrative charge filing requirement altogether' by depriving the employer of adequate notice and resulting in a failure to investigate by the responsible agency." Id. (citing Conroy v.

16

Boston Edison Co., 758 F. Supp. 54, 59-60 (D. Mass. 1991). Plaintiff's May 22, 2002, EEOC charge--which charged Defendant Lucent with retaliation for Plaintiff's May 2, 2002, termination--included facts relating to his prior allegations of race and sex discrimination. Neither Plaintiff's May 22, 2002, nor his January 29, 2002, EEOC charge, however, alleges any facts from which a charge of age discrimination would flow. Therefore, Plaintiff's age discrimination claim cannot relate back to Plaintiff's prior EEOC filings and is, accordingly, untimely.

Plaintiff argues that equitable tolling and equitable estoppel dictate that charges regarding discriminatory acts against him occurring outside the 180-day period preceding his EEOC filing are timely. "Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987) (citing Lawson v. Burlington Indus., 683 F.2d 862, 864 (4th Cir. 1982); Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985); Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307-08 (3d Cir. 1983)). Generally, "[t]o invoke equitable tolling, the plaintiff must . . . show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." Id. Equitable tolling may apply when "an employer violates the

17

posting requirement, [in which case] the charging period is tolled until the plaintiff 'acquires actual knowledge of his rights or retains an attorney.'" Id. (quoting Vance v. Whirlpool Corp., 716 F.2d 1010, 1013 (4th Cir. 1983)). Equitable estoppel "applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." Id. (citing Felty v. Graves-Humphreys Co., 818 F.2d 1126 (4th Cir. 1987); Price v. Litton Bus. Sys., 694 F.2d 963, 965 (4th Cir. 1982)). "The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence of either a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." Id. (citing Price, 694 F.2d at 965).

Here, Plaintiff has not alleged any facts sufficient to infer deception, misconduct, or the misleading of Plaintiff on the part of Defendant Lucent warranting the application of equitable relief. Plaintiff's out-of-state work schedule while working for Defendant Lucent, without more, does not constitute misconduct on the part of Defendant Lucent. Plaintiff even acknowledges that his filing was delayed in part due to his attorney's schedule. (Pl.'s Rebuttal to Def. Lucent's Mot. to Dismiss--Law in Supp., at 10.) Plaintiff had sufficient facts to

18

file a timely complaint regarding his July demotion yet did not do so,[4] so the purported newly discovered evidence does not justify extending the filing deadline. Finally, Plaintiff has not alleged a lack of knowledge regarding his rights with the EEOC but simply that Defendant Lucent failed to meet the posting requirements.[5] Accordingly, the court finds Plaintiff's arguments regarding the applicability of equitable doctrines inapplicable to the present case, and Defendant Lucent's motion to dismiss charges regarding untimely acts will be granted.

CONCLUSION

For the foregoing reasons, the court will (1) grant Defendant Stickney's motion to dismiss for lack of personal jurisdiction; (2) grant Defendants Presley, Troianello and Gibbons's motion to dismiss for failure to state a claim; (3) deny Defendant Lucent's motion to dismiss regarding the timeliness of Plaintiff's service on Defendant Lucent; and (4) grant Defendant Lucent's motion to dismiss Plaintiff's

---

[4]In his May 22, 2002, EEOC filing, for example, Plaintiff states that "[b]elieving [that Defendant Lucent's decision to demote Plaintiff in July 2001 was] due to Lucent's desire to fulfill its written policy of hiring quotas for minorities, I filed a claim by email with Lucent's internal EO/AA Officer" in August 2001.

[5]In his May 22, 2002, EEOC filing, Plaintiff acknowledged he had retained an attorney in this matter by September 7, 2001.

19

untimely EEOC charges.  Plaintiff's timely claims asserted against Defendant Lucent, namely his allegation of race and gender discrimination and retaliation regarding Defendant Lucent's failure to promote Plaintiff to Team Leader in October 2001, and Plaintiff's allegation of retaliation in Defendant Lucent's May 2, 2002, termination, remain.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

_____
United States District Judge

June 10, 2005